## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| VENKATA SUDHAKAR AMERINENI, Individually and on behalf of all others similarly situated, <br><br>     Plaintiff, <br><br>     v. <br><br> MARUTHI TECHNOLOGIES LLC (D/B/A ANBLICKS), VAMSI KADIYALA,  PADMAJA KADIYALA, KUMAR TIRUMAL, and GAVS INFORMATION SERVICES (D/B/A GAVS TECHNOLOGIES) <br><br>     Defendants. | Civil Action No. 11-3548 <br> CLASS ACTION COMPLAINT <br> JURY TRIAL DEMANDED |

## COMPLAINT-CLASS ACTION

## I. PRELIMINARY STATEMENT

This case involves a scheme by Defendants to defraud and underpay foreign workers who have relocated to this country to legally work under H-1B visas.

Defendant Maruthi Technologies, d/b/a Anblicks, is an H-1B sponsor employer that recruits H-1B workers, and arranges for those workers to provide services for third-party clients. Maruthi Technologies and the other defendants, Vamsi Kadiyala, Padmaja Kadiyala, Kumar Tirumal and Gavs Information Services (collectively, "Defendants") act in concert to accomplish this fraudulent scheme.

Defendants recruit foreign workers and after their arrival in the United States, Defendants fail to pay these workers: (1) the full (legally-required) prevailing wages for project work they perform; and (2) wages that are legally-required during "benched" or nonproductive time where the workers are not provided work by Maruthi. Defendants fail to make these payments despite prior representations made to the worker and to the federal government that these required wages would be paid.

The Immigration and Nationality Act ("INA") limits the types of foreign workers eligible for H-1B visas, and imposes prevailing wage requirements on H-1B sponsor employers in order to protect American workers. These wage requirements include that sponsor employers are required to pay their H-1B employees the higher of (a) actual wages the employer pays co-workers in related positions or (b) a "prevailing wage" for the specialty, as determined by an independent survey of wages paid to workers similarly employed in the geographic area of intended employment. Sponsor employers are further required to provide prevailing wages to H-1B employees during the periods that they are in nonproductive status (commonly called "benched" status): that is, when the H-1B worker is not performing work due to a decision by the employer, e.g., because of lack of assigned work. See 20 C.F.R. § 655.731(c)(7). These wage requirements are designed to both prevent exploitation of foreign workers and to avoid the influx of cheap foreign labor for professional services.

In order to secure H-1B visas for its recruits, Defendants knowingly make false and fraudulent representations to the federal government of the United States. When

2

applying for an H-1B visa, those Defendants have attested and certified to the federal government that Maruthi will pay H-1B workers their required prevailing or actual wage, including a salary for nonproductive periods of time in which Maruthi does not have paid client projects. Yet, it is Defendants' knowing and ongoing practice to pay less than the prevailing wages for project work time, and no wages whatsoever for benched time.

Plaintiff brings this action on behalf of himself and a class of Maruthi H-1B employees who were subject to Defendants' fraudulent scheme and were not paid prevailing or actual wages for their project work and nonproductive time. On behalf of the Class, Plaintiff seeks damages for the underpayment of wages as well as penalties, recovery of costs, interest and attorney's fees.

## II. PARTIES

1.      Plaintiff Venkata Sudhakar Amerineni ("Amerineni") is a citizen of India, and currently resides in San Antonio, Texas. At material times, Plaintiff Amerineni held an H-1B visa sponsored by Defendant Maruthi Technologies, LLC.

2.      Defendant Maruthi Technologies LLC, d/b/a Anblicks ("Maruthi"), is a Texas corporation with its principal place of business at 5055 Keller Springs Road, Suite 160, Addison, Texas 75001. Maruthi also has a facility in Hyderabad, India. Maruthi's registered agent, according to State of Texas corporate records, is Jeff Pickering, 6533 Preston Road, Suite 300, Plano, Texas 75024.

3.      Defendant Vamsi Kadiyala is an adult resident of India, and an American Citizen, who travels to and conducts business within the United States on

3

behalf of Defendant Maruthi and himself. At all material times, Vamsi Kadiyala has been an owner of Maruthi. Vamsi Kadiyala was responsible for directing fraudulent operations and making false representations and attestations on behalf of Maruthi with regard to H-1B workers, including representations made regarding the Plaintiff's H-1B visa application.

4.     Defendant Padmaja Kadiyala is an adult resident of India, and an American Citizen, who travels to and conducts business within the United States on behalf of Defendant Maruthi and herself.  At all material times, Padmaja Kadiyala has been the Human Resources (HR) Manager of Maruthi. Padmaja Kadiyala was responsible for directing fraudulent operations and making false representations and attestations on behalf of Maruthi with regard to H-1B workers as discussed herein, including representations made regarding the Plaintiff's H-1B visa application.

5.     Defendant Kumar Tirumal ("Tirumal") is an adult resident of Irving, Texas, who conducts business within the United States on behalf of Defendant Maruthi and himself. At all materials times, Tirumal has been the Operations Director of Maruthi. Tirumal was responsible for directing fraudulent operations and making false representations and attestations on behalf of Maruthi with regard to H-1B workers as discussed herein.

6.     Defendant GAVS Information Services, Inc. d/b/a GAVS Technologies N.A., Inc., d/b/a GAVS Technologies Pvt. Ltd (collectively, "GAVS"), includes a Colorado-incorporated entity operating facilities located at 10901 West 120th

4

Avenue # 110, Broomfield, Colorado, 116 Village Blvd, Suite 200, Princeton, New Jersey, and Horizon Center, 94 TTK Road, Chennai, India. GAVS (and the affiliates therein) comprise a technology services and solutions company, with offices in the U.S. and India. GAVS' registered agent for service in the United States, according to State of Colorado corporate records, is Prakash K. Vasant,10901 W. 120th Ave., Suite 110, Broomfield, Colorado 80021.  GAVS has assisted Maruthi in perpetuating its fraudulent scheme through providing assistance in placing foreign workers with an end client, and providing payroll and wage related functions to Maruthi. GAVS helped to perpetuate Maruthi's fraudulent scheme and underpayment of H-1B workers.

### III.   JURISDICTION, VENUE AND INTERSTATE COMMERCE

7.    The Court has subject matter jurisdiction pursuant to 18 U.S.C. § 1964 (RICO). The Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) because certain claims in this action arise under 18 U.S.C. § 1589 (forced labor), 18 U.S.C. § 1590 (trafficking with respect to forced labor), and 18 U.S.C. §§ 1961-1968 (RICO). Jurisdiction over Plaintiff's claims under 18 U.S.C. § 1589 (forced labor), and 18 U.S.C. § 1590 (trafficking with respect to forced labor) is further conferred upon this Court pursuant to 18 U.S.C. § 1595(a).  This Court also has jurisdiction pursuant to 28 U.S.C. § 1332 (diversity jurisdiction), because this action is brought as a class action, diversity of citizenship exists between the parties, and the aggregate amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. Jurisdiction over Plaintiff's claims under

Texas law is appropriate pursuant to 28 U.S.C. § 1367. Additionally, jurisdiction over Plaintiff's state law claims is based upon the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2)(A), because the parties are diverse and the amount in controversy exceeds $5,000,000, exclusive of interest and costs.

8.    Venue in this District is proper pursuant to 28 U.S.C. § 1391 and 18 U.S.C. § 1965(a), in that Defendants (either currently or during the relevant time period of this Complaint) inhabit, transact business, reside, are found, or have an agent in this district; a significant portion of the affected interstate trade and commerce described below has been carried out in this District; and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

9.    Defendants' fraudulent activities were within the flow of and had a proximate, direct, substantial, and reasonably foreseeable effect on interstate commerce.

10.    Relief is sought against Defendants as well as their employees, agents, assistants, and successors.

## IV.    GENERAL FACTUAL ALLEGATIONS

11.    Upon information and belief, Maruthi has employed over 50 H-1B employees during the relevant statutory period. Defendants actively recruit potential H-1B employees from outside of the United States. Defendants promise potential employees that Maruthi will pay a specific salary if a potential employee relocates to the United States, or transfers H-1B employment from an existing H-1B employer to Maruthi. Maruthi petitions the federal government for an H-1B visa for

potential employees. In petitioning the government, Maruthi certifies and attests that it will (a) pay employees the higher of an "actual wage" or "prevailing wage" as defined by law and (b) will pay that wage for nonproductive time (commonly called "benched" time) in compliance with 20 C.F.R. § 655.731(c)(7).

12.     The attestations above that Maruthi makes about its H-1B workers' wages are knowingly false.

13.     Maruthi attested to the federal government, in a Labor Condition Application ("LCA") it filed for Mr. Amerineni, attached as Exhibit 1 to this complaint, that his prevailing wage was $62,878 per year, and that Maruthi would pay him a wage rate of $63,000. Maruthi attested that the required wage would be paid for nonproductive/benched time, as well as regular work time. These attestations were knowingly false.

14.     Maruthi enters agreements with H-1B employees as to terms of employment and wages, the terms of which begin when the H-1B workers begin their employment with Maruthi in Texas.  Under these agreed terms of employment, Maruthi agrees to pay the H-1B workers at least the prevailing wage rate, and on some occasions more.

15.     H-1B employees like Mr. Amerineni who accept positions with Maruthi learn—after reporting to work—that there is no work available and that they will not be paid for such nonproductive/benched time when they are not provided work.

16.     Maruthi requires these H-1B employees to obtain third-party consulting work and steer income from that work to Maruthi before these individuals are paid any wages.

17.     In addition to unpaid "benched" periods at the start of their employment relationship with Maruthi, those employees who do eventually find third-party consulting work often experience gap periods between consulting projects. These Maruthi H-1B employees are not paid the required prevailing wage, or any wages, during these gap periods of nonproductive/benched time.

18.     Maruthi H-1B employees who do find paying project work continue to be underpaid by Defendants, and receive less than the required prevailing wage or the wage promised by Maruthi.

19.     Plaintiff Amerineni's experience is representative of Defendants' fraudulent scheme, and he is similarly situated to the members of the class as defined in paragraph 56 infra.

## VI.   PLAINTIFF AMERINENI'S EXPERIENCE AT MARUTHI

A.     FAILURE TO PAY WAGES FOR BENCHED/NONPRODUCTIVE WORK

20.     On March 20, 2008, Defendant Padmaja Kadiyala, who is Maruthi's HR Manager, and who at all material times acted under the knowing directive of Defendant Vamsi Kadiyala, sent an LCA to the Department of Labor via interstate wire, to secure an H-1B approval for Mr. Amerineni.  See Exhibit 1, incorporated here by reference.

8

21.     Ms. Kadiyala also sent via interstate wires this LCA to the United States Citizen and Immigration Service (USCIS).

22.     Ms. Kadiyala's LCA for Mr. Amerineni represented that Mr. Amerineni would be provided a job as a Project Development Manager in Dallas, Texas, and would be paid a salary of $63,000 per year. Ms. Kadiyala also represented in the LCA that the "period of employment" would encompass September 20, 2008 through September 20, 2011. Ms. Kadiyala also attested in the LCA that Maruthi would pay Mr. Amerineni required wages for nonproductive/benched time. Ms. Kadiyala personally certified that all statements in the LCA were "true and accurate."

23.     These LCA representations were false and fraudulent. Ms. Kadiyala, Vamsi Kadiyala and Maruthi knew that Maruthi had no job for Mr. Amerineni in Dallas, Texas or anywhere else, and had no intention to pay legally-required wages for nonproductive/benched time.

24.     The falsity of these LCA representations were further demonstrated by Maruthi's common and uniform practices with existing H-1B workers, who are benched without wages and who, once they find project work, are underpaid at a rate lower than the prevailing wage for their productive labor.

25.     Ms. Kadiyala, Vamsi Kadiyala and Maruthi knew, at the time they completed and transmitted Mr. Amerineni's LCA and attestations to the federal government, that Maruthi's ongoing practice was to not pay required wages to H-1B workers during workers' nonproductive/benched time.

26.     Mr. Amerineni reported to Dallas, Texas for work with Maruthi on October 1, 2008. Mr. Amerineni then learned, for the first time, that Maruthi did not have work available and would not pay him the required prevailing wages until he found a paying third-party client project. He was thus "benched"/in nonproductive status, without being paid any required wages.

27.     Mr. Amerineni was benched without pay for multiple periods during his employment. During those periods of benched time, Mr. Amerineni was available and willing to work, and he sought out third-party client projects and work by reviewing job advertisements, submitting application documents, attending interviews, and otherwise seeking project work on behalf of Maruthi.

28.     Between October 1, 2008 and December 31, 2008 (a 13-week period), Mr. Amerineni was benched because Maruthi did not have work or third-party client work available for him. During this benched period, Maruthi failed to pay Mr. Amerineni any wages.

29.     Mr. Amerineni was benched between January 1, 2009 and April 12, 2009 (approximately 14 weeks), because Maruthi did not have work or third-party client work available for Mr. Amerineni.  During this benched period, Maruthi failed to pay Mr. Amerineni any wages.

30.     Similarly situated individuals employed by Maruthi under H-1B visas, like Mr. Amerineni, were not paid any wages for non-productive or benched time.

10

B.      FAILURE TO PAY PREVAILING WAGES FOR PRODUCTIVE WORK

31.     From April 13, 2009 through August 30, 2009, Mr. Amerineni worked on a third-party project for an end client, Deloitte Consulting ("Deloitte"), in Camp Hill, Pennsylvania, work approved by Maruthi.

32.     Prior to the project at Deloitte starting, Defendant Maruthi's representatives informed Mr. Amerineni that, if he secured work with Deloitte, Maruthi would receive $40 per hour for his work. These representations were made by Maruthi's Marketing/Sales Manager Madhu Nalamothu.

33.     Defendant GAVS acted as an intermediary between Maruthi, a second vendor, Info-Matrix Corporation, and Deloitte, as discussed below, and GAVS received its own fee from Deloitee outside of any payment (whether $40 per hour or otherwise) that Maruthi received. On information and belief, Info-Matrix Corporation also received a portion of the wages paid by Deloitte.

34.     Prior to the beginning of the Deloitte project, Defendant Kumar Tirumal (Operations Director of Maruthi) informed Mr. Amerineni that he would receive as wages 80% of the compensation paid by Deloitte to Maruthi, and Maruthi would keep the remaining money (20%) as a fee. Tirumal also informed Mr. Amerineni that Maruthi was to be paid $35 per hour for Mr. Amerineni's work at Deloitte, and Mr. Amerineni would be paid 80% (thus $28/hour) as wages after Maruthi's 20% fee ($8/hour) was deducted. Defendant Vamsi Kadiyala, in a separate conversation, confirmed that Mr. Amerineni would be paid this amount. These statements were knowingly false.

35.     Maruthi paid Mr. Amerineni less than the promised rate of 80% of $35 per hour for his project work with Deloitte. Maruthi never paid Mr. Amerineni at the prevailing wage or actual wage required by H-1B law ($63,000 per year/$30.29 per hour or higher) for his project work with Deloitte.

### V.  PAYMENTS RECEIVED BY THE PLAINTIFF DID NOT MEET DEFENDANTS' OBLIGATION TO PAY PLAINTIFF AT LEAST THE PREVAILING WAGE FOR ALL HOURS WORKED

36.     For the majority of the time between September 1, 2009 and Mr. Amerineni's resignation date of March 28, 2011, Maruthi failed to make work available (either in-house or third-party project work) and Mr. Amerineni was benched without being paid the prevailing wage, or any wages, as required by federal law.

37.     Attached as Exhibit 2 is a payroll summary document, showing the amounts of all biweekly payments from Maruthi to Mr. Amerineni between October 1, 2008 and March 28, 2011.  As Exhibit 2 itemizes and calculates, Maruthi paid wages between October 1, 2008 and March 28, 2011 that totaled only $44,817.12.

38.     Attached as Exhibit 3 are W2s from 2008-2010 issued by Maruthi, indicating that for the period between Mr. Amerineni's start date of October 1, 2008 through December 31, 2010 (a 117- week period) Maruthi paid Mr. Amerineni wages totaling only $38,357.

39.     Attached as Exhibit 4 are pay stubs from 2011 and prior issued by Maruthi, which further indicates that Maruthi paid Mr. Amerineni at low rates consistent with Exhibits 2-3.

40.     Maruthi issued some pay stubs (specifically, those for pay periods with end dates 10/26/2008, 11/9/2008, 11/23/2008, 2/15/2009, 9/13/2009, 9/27/09, 1/17/2010, 1/31/2010, and 3/13/2011) for which Maruthi did not pay/deposit the payments it referenced in those pay stubs.

41.     Maruthi, under the directive of Defendant Vamsi Kadiyala (the primary person in charge of running Maruthi's payroll) and through the actions of Kumar Tirumal and Kushal Babu Maganti, knowingly falsified and issued the pay stubs to Mr. Amerineni on the above-referenced dates, with these Defendants having the intention of knowingly falsifying payroll documentation to make it appear, for Maruthi's H-1B legal compliance purposes, as if Maruthi was paying Mr. Amerineni wages he was not actually paid.

42.     Over the entirety of his employment, Mr. Amerineni should have been paid at a minimum rate of $63,000 per year or $1,211.54/week, according to Defendants' attestations in his LCA.  He had approximately 115 weeks of work time for which he should have been compensated by Maruthi at the required wage rate, and thus was owed wages of approximately $139,327.10 (115 wks x $1,211.54 required LCA wage/week = $139,327.10) for this time.

43.     As also discussed (and as Exhibits 2-4 show), Maruthi only paid Mr. Amerineni a total of $44,817.12 during this time of employment between October 1, 2008 and March 28, 2011.

44.     Maruthi has failed to pay Mr. Amerineni at least an estimated $94,509.98 in unpaid wages.

13

## VI. GAVS PARTICIPATION IN DEFENDANTS' FRAUDULENT SCHEME

45.     Defendant GAVS assisted Maruthi in perpetuating its fraudulent scheme arranging third party work for Maruthi's H-1B workers (including Mr. Amerineni) in exchange for a portion of the compensation earned by the H-1B workers.

46.     Defendant GAVS is itself an H-1B employer, and familiar with an H-1B employer's legal requirements, including an H-1B employer's LCA-attestations and obligations to pay at least the prevailing wage as referenced herein.

47.     GAVS and Maruthi reached a profit sharing agreement, and Mr. Amerineni accepted the position with Deloitte in Camp Hill, Pennsylvania.

48.     GAVS entered into similar profit sharing agreements with Maruthi relative to some putative class members.

49.     Maruthi entered into profit-sharing agreements with other middle-vendors that served the equivalent role as GAVS (described herein) as to other putative class members.

50.     During Mr. Amerineni's project work at Deloitte, Deloitte provided compensation for Mr. Amerineni's work to Info-Matrix Corporation and to GAVS. After collecting their fee, GAVS transmitted payment to Maruthi who ultimately provided payment of wages to Mr. Amerineni.

51.     GAVS knowing and fraudulently made representations to Mr. Amerineni that Deloitte was paying Maruthi (after GAVS' fee offset) at a rate of $35 an hour. In

fact, Deloitte was providing compensation (after GAVS' fee offset) to Maruthi for Mr. Amerineni's work at a rate of $40 per hour.

52.    During Mr. Amerineni's employment with Maruthi, GAVS profited from and furthered Maruthi's fraudulent scheme in several ways.  First, in transferring money and sharing profits with Maruthi, GAVS assisted in the underpayment of wages to Mr. Amerineni in violation of federal law. Defendant GAVS transferred money to Maruthi, and participated financially in an arrangement where Mr. Amerineni was repeatedly underpaid in violation of law, as described above.

53.    Defendant GAVS' actions and processing of compensation further acted to delay payment of Mr. Amerineni's wages, in violation of wage laws including 20 C.F.R. § 655.731, for multiple payroll periods for his work for Deloitte between April 13, 2009 and August 30, 2009.

54.    Because GAVS was an entity that was paid to serve as an intermediary between Maruthi and a third-party end-client, and because GAVS, by virtue of its experience with its own employment of H-1B workers, knew of the H-1B wage requirements (including wage-delay and underpayment violations per 20 C.F.R. § 655.731 as referenced herein), GAVS benefitted financially from participation in Maruthi's scheme knowing that the scheme constituted an abuse of legal process and was otherwise illegal. GAVS has acted with knowledge, or in reckless disregard, of the fact that its venture with Maruthi and the Maruthi-employed Defendants has engaged in the providing of labor or services by means prohibited by 18 U.S.C. §

15

1589(a). GAVS has knowingly benefitted, financially or by receiving anything of value, from participation in that venture.  18 U.S.C. 1589(b).

55.    In violation of 18 U.S.C. § 1590, GAVS knowingly recruited and obtained Mr. Amerineni and other H-1B workers to perform services, where they were subjected to violations of 18 U.S.C. § 1589, as described above.

## CLASS ACTION ALLEGATIONS

56.    Plaintiff brings this action, with regard to Counts I-IV below, pursuant to Fed. R. Civ. P. 23, on behalf of a class of:

> Current or former H-1B visa holders employed by
> Defendant Maruthi from four years prior to the date of
> the filing of this Complaint through the present, and who
> were 1) paid less than the prevailing wage during their
> third-party project work while employed by or through
> Maruthi and/or 2) who were paid less than the prevailing
> wage for nonproductive/ "benched" periods.

57.    Excluded from the class are the Court and its officers, employees and relatives, Defendants and their parents, subsidiaries, affiliates, employees and co-conspirators, and government entities.

58.    Members of the class are so numerous and geographically dispersed that joinder is impracticable.  While the exact number of class members is unknown to Plaintiff, it is believed to be over 50 persons.  Members of the class are readily identifiable from information and records in possession of the Defendants.  Maruthi is required by law to maintain copies of its H-1B workers' LCAs (which indicate identifying information about the H-1B workers, and attestations about work and

wages as referenced above), and their payroll records (which indicate payment of wages and underpayment thereof).

59.     Questions of law and fact common to members of the class predominate over questions, if any, that may affect only individual class members because Defendants have maintained a common pay practice which violates the law, Defendants do not pay H-1B workers required wages for nonproductive time and pay H-1B workers less than the prevailing wage for productive work. Common questions of law or fact include, but are not limited to:

a.   Whether Defendants engaged, and/or conspired to engage, in a scheme to defraud Maruthi's H-1B employees by underpaying required wages;

b.   Whether Defendants' conduct violates the Federal Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962;

c.   Whether Defendants obtained labor of class members by abuse of H-1B law or legal process, by threatened abuse of law or legal process, by serious harm (including financial and/or psychological harm) and by threats of serious harm, and thereby violated 18 U.S.C. §§ 1589, 1590;

d.   Whether Plaintiff and other class members have sustained or continue to sustain damages as a result of Defendants' wrongful conduct, and, if so, the proper measure and appropriate formula to be applied in determining such damages;

e.   Whether Plaintiff and the other class members are entitled to an award of compensatory, treble, and/or punitive damages, and, if so, in what amount.

60.    Plaintiff's claims are typical of the claims of the members of the class. Plaintiff and all members of the class were damaged by the same wrongful conduct by the Defendants, *i.e.,* they all have been underpaid for employment services as a result of Defendants' knowingly  false attestations to the federal government, falsifications of documentation relating to H-1B workers' wages, and other fraudulent and wrongful conduct.

61.    Plaintiff will fairly and adequately protect the interests of other class members because he has no interest that is antagonistic to or which conflicts with those of any other class member, and Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in litigation of this nature to represent Plaintiff and other members of the class.

62.    The prosecution of separate actions by individual members of the class would create the risk of inconsistent or varying adjudications with respect to individual members of the class, which could establish incompatible standards of conduct for Defendants.

63.    This class action is the superior method for the fair and efficient adjudication of this controversy.  Class treatment will permit a large number of similarly-situated individuals to prosecute their claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort and expense that numerous individual actions would produce.  The damages sustained by individual class members, although substantial, do not rise to the level

where they would have a significant interest in controlling the prosecution of separate actions against these well-financed Defendants.

64.     This case will be eminently manageable as a class action.  Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

## CAUSES OF ACTION

### COUNT I – VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT ("RICO"), 18 U.S.C. § 1962(C): ON BEHALF OF THE PUTATIVE CLASS AGAINST ALL DEFENDANTS

65.     Plaintiff incorporates the paragraphs above by reference as if fully forth herein.

66.     Title 18 U.S.C. § 1962(c) of RICO prohibits "any person employed by or associated with any enterprise . . . to conduct or participate . . . in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ." 18 U.S.C. § 1962(c).

67.     Defendants were associated in fact and have constituted an "enterprise" within the meaning of 18 U.S.C. § 1961(4), engaging in and affecting interstate commerce.

68.     At all times relevant to this Complaint, Defendants agreed to and did conduct and directly or indirectly participate in, or aided and abetted, the conduct of the enterprise's affairs through a pattern of racketeering activity and predicate acts in violation of 18 U.S.C. § 1962(c), including (a) making false and fraudulent representations to the federal government; (b) making false and fraudulent

19

representations to Plaintiff; (c) underpaying the Plaintiff and putative class member wages in violation of federal and state law; (d) immigration document falsifications in violation of 18 U.S.C. § 1546; (e) interstate mail fraud in violation of 18 U.S.C. § 1341; (f) interstate wire fraud in violation of 18 U.S.C. § 1343; (g) forced labor in violation of 18 U.S.C. § 1589; and (h) trafficking with respect to forced labor in violation of 18 U.S.C. § 1590.  These violations included, but are not limited to, the acts discussed in the prior paragraphs of this Complaint and in paragraphs 70-77 below.

69.     As a direct and proximate result of Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), Plaintiff and the putative class members have been injured in their business and property in an amount to be proven at trial.

## COUNT II - VIOLATION OF RICO, 18 U.S.C. § 1962(d) (RICO CONSPIRACY): ON BEHALF OF THE PUTATIVE CLASS AGAINST ALL DEFENDANTS

70.     Plaintiff repeats and realleges the allegations in the paragraphs above.

71.     As set forth above, Defendants unlawfully and willfully combined, conspired and agreed to conduct actions that are in violation of 18 U.S.C. § 1962(c). Defendants committed overt acts in furtherance of the conspiracy as described above.

72.     Defendants have intentionally conspired and agreed to directly and indirectly participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity.  Defendants knew that their acts were in violation of 18 U.S.C. § 1546 (a RICO predicate act and statute specifically referenced on LCA formwork Defendants had direct knowledge of and knowingly violated) and were

20

otherwise part of a pattern of racketeering activity and agreed to the commission of acts to further the schemes described above. That conduct constitutes a conspiracy to violate 18 U.S.C. § 1962(c), in violation of 18 U.S.C. § 1962(d).

73.     As a direct and proximate result of Defendants' conspiracy, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d), Plaintiff and the putative class have been injured in their business and property in an amount to be proven at trial by reason of Defendants' violation of 18 U.S.C. § 1962(d).

### COUNT III - VIOLATIONS OF 18 U.S.C. §§ 1589-1590, 1595 (FORCED LABOR AND TRAFFICKING WITH RESPECT TO FORCED LABOR): ON BEHALF OF THE PUTATIVE CLASS AGAINST ALL DEFENDANTS

74.     Plaintiff incorporates the paragraphs above by reference as if fully set forth herein.

75.      Defendants violated 18 U.S.C. § 1589(a) by knowingly obtaining and providing the labor and services of Plaintiff and class members by, among other things, means of the abuse or threatened abuse of law or legal process.

76.     Defendants violated 18 U.S.C. § 1589(b) by knowingly benefiting, financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in 18 U.S.C. § 1589(a), knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by any of such means.

77.     Defendants violated 18 U.S.C. § 1590 by knowingly recruiting, providing, or obtaining any person for labor or services in violation of 18 U.S.C. § 1589. As a direct and proximate result of Defendants' acts and violations of 18 U.S.C. § 1589 and 1590, Plaintiff and the putative class have been injured in their business and property in an amount to be proven at trial.

## COUNT IV- BREACH OF CONTRACT UNDER TEXAS COMMON LAW: ON BEHALF OF THE PUTATIVE CLASS AGAINST MARUTHI

78. Plaintiff incorporates the paragraphs above by reference as if fully set forth herein.  Plaintiff advances Count IV against Maruthi.

79. Maruthi entered into agreement with Plaintiff and members of the putative class to pay wages in the amount promised in their LCA.

80. Maruthi breached these agreements by not paying the Plaintiff and the punitive class members wages at the promised rate.

81. Maruthi's failure to pay Plaintiff and the putative class their full wages as promised in and required by their contracts executed in Texas were in breach of contract under Texas common law.

82. Plaintiff and the putative class members suffered a wage loss as a direct and proximate result of Maruthi's breach.

## JURY TRIAL DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff, on his own behalf and on behalf of the class, demand a trial by jury of all claims asserted in this Complaint so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests entry of judgment against Defendants, jointly and severally:

a.      Certifying that this action may be maintained as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure, appointing Plaintiff as class representative and his counsel as lead class counsel;

b.      Directing that reasonable notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure be given to members of the Class;

c.      Awarding Plaintiff and the Class their full monetary damages to be proven at trial;

d.      Awarding Plaintiff and the Class their unpaid wages, as well as liquidated damages, interest, and all civil remedies available under statutory law and common law;

e.      Awarding Plaintiff and the Class treble their monetary damages, pursuant to 18 U.S.C. § 1964;

f.      Awarding all civil remedies under 18 U.S.C. § 1593 (mandatory restitution) to be paid in addition to any other civil penalties authorized by law;

g.      Awarding Plaintiff and the Class pre-and post-judgment interest on their damages;

h.      Awarding Plaintiff and the Class the costs of this action and

reasonable attorneys' fees pursuant to 18 U.S.C. §§ 1595, 1964 and other statutory

law and common law;

i.      Awarding Plaintiff and the Class such other and further relief as the

Court deems just and proper.

Dated this __22__ day of December 2011.

Respectfully submitted,

**PETERSON, BERK & CROSS, S.C.**
Attorney for Plaintiff


By:_____s/Michael F. Brown_____

Michael F. Brown, State Bar No. 1041753
Peterson, Berk & Cross, S.C.
200 E. College Ave.
Appleton, WI 54912
920-831-0300
920-831-0165 (fax)
mbrown@pbclaw.com

**HAWKS QUINDEL, S.C.**
Attorneys for Plaintiff


By:_____/s/ William E. Parsons_____

William E. Parsons, State Bar No. 1048594
Email: wparsons@hq-law.com
David C. Zoeller, State Bar No. 1052017
Email: dzoeller@hq-law.com
Danielle M. Schroder, State Bar No. 1079870
Email: dschroder@hq-law.com
Post Office Box 2155
Madison, Wisconsin 53701-2155
Telephone:  608/257-0040
Facsimile: 608/256-0236

24

**ANDREWS KURTH, LLP**
Attorney for Plaintiff


By:_____ s/ Aaron Epstein_____

          Aaron J. Epstein, State Bar No. 24061562
          Email:  aaronepstein@andrewskurth.com
          1717 Main Street, Suite 3700
          Dallas, Texas 75201
          Telephone: 214/659-4611
          Fax: 214/915-1423